Yes, good morning, your honors. Good morning. Good morning. May it please the court. My name is Roxana Morone. I represent Mr. Faheem Abbas in connection with this petition for review. The facts in this case are undisputed. The immigration judge had made a credibility finding. There are no adverse findings. There are, however, several errors that were committed throughout the IHA's decision that the BIA adopted. First, the immigration judge found that Mr. Abbas was not, had not suffered past persecution in Ecuador. And that is wrong, your honors. The BIA and both the immigration judge and the board both relied on or held on to GU versus the GU versus Ashcroft case and found that my client did not suffer past persecution, minimizing the harm that he had suffered. My client was beaten. There were threats, death threats. He was beaten with a rod. He was held by three men. And these were three individuals or at least two of them who had come all across the world from Pakistan to Ecuador to find him because he had converted to a Shia Muslim. He had been a Sunni Muslim and converted and that is deplorable. They treated him like an infidel. They had told him in Pakistan that killing him would, you know, ascend them directly into heaven. And so he feared for his life. And so he did show that he had suffered past persecution. Moreover, the court also erred when they found that my client had not demonstrated that the Ecuadorian police was unwilling or unable to control his persecutors. And what the judge did in that case was that they found that because Mr. Abbas had reported the incidents to the police and had been able to obtain a restraining order, that that was sufficient. And the inquiry for the court and the BIA ended there. There was no other fact finding or no other development of the record. And this court has never found that reporting something to the police is sufficient to find that the police is able and willing to control. In fact, in this case, while Mr. Abbas did report to the police and did obtain a restraining order, there is an incident that happens in front of the police. Mr. Abbas shows the police a restraining order. He fears for his life and the police tells them, treats it like a schoolyard fight almost. Everybody just go your own separate ways. Mr. Abbas did not feel that that showed to him that the police was able or even willing to want to control his persecutors. Did anything happen to him in that incident? I thought the police separated them and nothing happened. Nothing happened during that incident, but there had been a previous incident where he had been seeking assistance from the police. He got a restraining order and then when he sought the police's help, they actually separated them. That's correct. They did. They told them to go their own separate ways. Well, given that he is actually able to get an official order, plus the police diffused the situation, it's hard for me to quite understand the argument that the government has not done anything to protect him or that they're unwilling. I don't know how he jumped to that conclusion given from this evidence. Well, because in that case, the immigration judge had found that just the mere reporting and the ability to obtain the protective order and the fact that the police had, that they happened to be in the vicinity when the second incident happened, the court had found that that was sufficient. Whereas, it would mean then that the court would have wanted Mr. Abbas to hang around Ecuador to see what would happen next. I mean, are they going to be able, is he going to be able to obtain assistance in the future? I mean, simply merely telling them to walk away from him when he feared for his life, when he himself feared that he may die, it wasn't sufficient. I know there's an issue regarding the protective order and whether or not the police had to arrest the individuals, but they were in violation. They're not supposed to be near him. And the police diffused the situation by just telling everyone to go away. That certainly didn't make Mr. Abbas feel that he was safe, that he could go home safely that night. And so I think that's the part where I don't think that the court necessarily was correct in just finding that because there was a report and a protective order that that's sufficient that the inquiry would end there. And so in that case, it should be remanded to develop further findings. As far as withholding of removal from Pakistan, in that case, the immigration judge had found that Mr. Abbas had suffered past persecution and then places the burden on the government to rebut the presumption that Mr. Abbas would be able to internally relocate to Pakistan. And in that case, what the immigration judge did was that he simply cherry picked findings. In that case, the Department of Homeland Security argued that because Mr. Abbas had been able to go to the 30 days. I didn't see anything in the record. The government says there wasn't, but maybe you could point me to it. Let me get back to you on that. I may have talked about the cases that we had cited. He goes to Lahore for 30 days and then from there he goes to Iran and then goes to Ecuador. But he's only in Lahore for 30 days. His family tells him that they continue to threaten him and look for him. His brother informs him, his parents inform him. And then he has no choice but to leave. The country conditions show that there is persecution against Shiite Muslims. There are country conditions that talk about the SSP. His particular mosque, the imams in his particular mosque persecuted him because he converted. And his particular mosque had connections to the SSP, which just placed my client in a different situation. Can I get a clarification from you on that point? I'll ask the government the same question. I understand that his situation, according to him of course, is that not only is he Shia, but he converted from Sunni to Shia. But how is it that the government would be able to make a relocation case on that second aspect? I mean the government provided information on the number of Shia Muslims in the country and the location and the different areas. But are you saying the government has to show that he could relocate as a converted Shia or as a Shia? Well I think that because we have to look at the individualized risk of persecution, he's different from just stating the fact that there are 46 million other Shiite Muslims in Pakistan. His situation is different. So I'm not sure how many have converted in Pakistan, but his situation is distinct. And I don't think we have to find that the government would have to show that there is relocation possible for converted Muslims. But I think it has to recognize that Mr. Abbas is not just any regular individual. There's the conversion, there's the SSP. I mean there are just very individualized facts in this case that the immigration judge does not take into consideration. He looks at generalized country conditions to find that because there are 46 million other Shiite Muslims in Pakistan that my client is able to safely relocate. Does the passage of time have any impact here? Well certainly during the time that Mr. Abbas was in Pakistan, the country conditions demonstrated that there was a risk of persecution for some Shiite Muslims, particularly in the 10 years preceding his departure. But the country conditions have not changed to show that the passage of time is important. In this case, we're still dealing with a very particular set of facts where my client believes that his co-imams were affiliated with terrorist organizations. And so in his case, the individualized facts are just very, very different. Although at this point, if there are no more questions, I'd like to reserve the last four minutes for rebuttal. But I also wanted to, and I don't know if the court would like to hear, we did not discuss firm resettlement, but I am aware that there are two cases that came out. One came out on Thursday. Did you send these to us as a 28-J letter? I can send them as a 28-J letter, yes. Because one just came out on Thursday, yes. Yeah, and so we don't typically want to hear about new cases that haven't been, the court hasn't been advised of. I mean, we keep on top of things, but we also, that's unfair to opposing counsel. So if you have additional citations, you can send a 28-J letter. Yes, Your Honor. And at this point, I'll rest and save the rest of my time for rebuttal. You may. Could I just, before you said four minutes, could I just take 22 seconds? Yes. In your opening remarks, you said that the person in Ecuador had pursued him all the way from Pakistan because he converted. And my recollection of the record isn't that the individual who was leading the attack in Ecuador had actually traveled to Ecuador for that purpose. I thought they were, that he just happened to be in the same mosque and then found out whether it was about the conversion or what. But the basis for you saying that this person traveled all the way from Pakistan to do this? Right. So that was Mishal, that he was already in Pakistan. It's the two other individuals that show up from Pakistan to Ecuador. There are two other that he feared. Right. But did they come from Pakistan to attack him? My client, that was the testimony. And the judge found that the client was credible. And so, yes, because Mishal had indicated to him that he found out who he was, that he knew exactly what had happened, that he had spoken to people near Tulamba. And that is when these two other individuals show up. And so those are the connections that my client made. Thank you. Ms. Jones? Good morning. May it please the court. My name is Tracy Jones and I'm appearing on behalf of the respondent, the United States Attorney General. The court should deny the petition for review in this case because substantial evidence supports the agency's conclusion that petitioner is not compelled or contrary to conclusion. To start off with, the petitioner in this case is claiming that he is eligible for relief and CAP protection from two countries, from Ecuador and from Pakistan, both of which he has citizenship. As an initial matter, petitioner counsel just indicated that there were two cases that recently were released in regards to farm resettlement. Farm resettlement is not at challenge and it has not been challenged in this case. In fact, the petitioner in her reply brief on page eight says that she's not contesting or that he is not contesting that he was finally resettled in Ecuador and therefore barred from seeking asylum from Pakistan. Therefore, the two cases that recently were released or issued by this court would be irrelevant in this case because the petitioner has expressly weighed any challenge to the relevant issue. Now, moving on to the, I'm sorry, the claims for asylum and withholding of removal with respect to Ecuador. The agency properly determined that the petitioner was not in actual harm in Ecuador. With respect to past persecution, the petitioner stated that he was persecuted and physically harmed on one occasion and had two other instances where he was threatened by Mr. Mischall and two other individuals. However, looking at the totality of the circumstances in this case, this is not sufficient to constitute past persecution. In petitioner's argument, petitioner indicated that the two men that were with Mr. Mischall were from Pakistan. However, there's no testimony in the record that these two men were actually from Pakistan. If you refer to the page 192 of the administrative record, the petitioner indicated that his family had told him that there were, that the individuals were going to come looking, individuals were looking for him in Ecuador. Not only that these individuals actually went to Ecuador or that these men were the ones who were for the beat or the threats that the if Mr. Mischall, I'm sorry, Mr. Mischall was persecuting him, or I'm sorry, was harming him or attacking him in Ecuador on the fact of his, of him being converted Shiite Muslim, or if it was just because he learned of his Shiite, learned that he was in fact a Shiite Muslim. The petitioner in this case indicated that it was because he was a Shiite Muslim and that later on Mr. Mischall learned of his conversion. So at no point in time did Mr. Mischall indicate that he was, that the harm that he was inflicting or the threats were as a result of Mr., of the petitioner's, it was a result of the petitioner's conversion to Shiite Muslim, Islam, or the fact that the petitioner had any past harm or incidents in Pakistan. With regards to the well-founded fear of future persecution argument, in order to qualify for asylum, the petitioner has to demonstrate that the source of persecution was from the government, a quasi-official group of persons or groups that the government is unwilling or unable to control. In this situation, the petitioner has not established that the Ecuadorian government was unable or unwilling to protect the petitioner from Mr. Mischall or any other private individuals. Every time the petitioner availed himself of the police, the police offered some type of assistance. Following his incident where he was beaten on March the 20th of 2017, the petitioner was able to file a police report. Even following the threats that the petitioner had received before then, the police, when the police were contacted, the police offered to send individuals to investigate if the individuals were actually still at his home, in which the petitioner indicated that the individuals were no longer there and the police did not send any men to investigate since the men were the individuals alleged who allegedly were threatening him were no longer present at his home. On April the 4th, it was nothing different than the Ecuadorian government offering assistance to the petitioner. The Ecuadorian government issued a restraining order in which they enforced on April the 4th when the petitioner was approached by Mr. Mischall and the two other individuals. Therefore, based on this evidence in the record, it's clear that the Ecuadorian government has been willing and able to protect the petitioner from Mr. Mischall and any other private individuals that are interested in targeting or harming the petitioner. Moving on to Pakistan, in this case, as I mentioned before, farm resettlement is not an issue. It was raised by the petitioner and therefore the petitioner is barred from seeking asylum. However, that bar does not also bar the in this case, the agency found that the petitioner did demonstrate past persecution with respect to the incidents that occurred in Pakistan. However, the petitioner rebuttable presumption of future persecution was properly rebutted by the government in showing that the petitioner could simply live in Pakistan. This is not a case where the agency merely just looked at the country conditions evidence in the record and determining relocation. The government actually, I'm sorry, the agency actually did do an individualized risk analysis and determining that based on not only the country conditions in the record, but also based on the fact that the petitioner was able to relocate to Lahore for 30 days without suffering any harm or any other further incidents and was able to safely live there supports the finding that the petitioner is able to safely relocate, therefore rebutting his presumption of future persecution. I do have a question. I have a question on the relocation issue. It's really two part. One is the Lahore situation was years ago for 30 days and there seems to be some dispute over whether he was in hiding or simply was in Lahore. And then the second point is with respect to the government's burden, do you think burden relates to showing the ability for a Shia Muslim to live in the country in different regions or for someone who had converted to the Shia sect? Well, Your Honor, to answer your first question, the mere fact that the petitioner was able to unharmed does support the finding. With regards to whether he was in hiding or not, the petitioner at no point during his testimony nor in his declaration that was attached to his asylum application indicated that he was actually in hiding. The petitioner's testimony in this case was fairly extensive. It was over 126 pages of transcript and at no point in any of his testimony did he indicate that he was actually in hiding in Lahore. The only thing he indicated was that he was in Lahore waiting for his visa to be approved for him to be able to travel to Iran, which he successfully did after residing in Lahore unharmed for 30 days. Now with respect to your second question in regards to whether it matters as far as converted converted Shia Muslims as opposed to regular Shia Muslims, there's no evidence in the record to show that a converted Shia Muslim is treated any differently. The petitioner didn't identify any evidence nor did the petitioner point to or identify any evidence in her opening brief or her argument that because he is a converted Shia Muslim that he should be treated any differently. The evidence in the record, specifically the country conditions, clearly show that there are safe regions for Shia Muslims to relocate and this court has held that the country conditions, specifically the International Religious Freedom Report that's included in the record from 2016, is the most reliable form of evidence regarding country conditions. And through the pages I cited in the answering brief clearly show that there are regions that the Shia Muslims are able to safely reside without suffering any harm or persecution. Therefore, based on these country conditions, it shows that Shia Muslims are safely able to reside. The petitioner at no point points to any evidence that a converted Shia Muslim would be treated or harmed any differently than a regular Shia Muslim, Pakistan Shia Muslim. I hope that answers your questions, Your Honor. Yes, thank you. Now, with regard to Pakistan, because the petitioner is able to relocate the presumption of future persecution was properly rebutted by the government and there's no evidence in the record that will compel a contrary conclusion. Now, moving on to CAAT, in this case the petitioner, the petitioner argues that he should receive CAAT protection because from Ecuador and from Pakistan. With regards to Ecuador, as I previously already argued, the petitioner was unable to show that he was unwilling or that the Ecuadorian government was unwilling or unable to protect him from Mr. Marshall or any other private individuals. Therefore, the petitioner failed to demonstrate a clear probability of torture if returned to Ecuador. And as with regards to Pakistan, the same holding with regards to the fact that the would also uphold the agency's denial of CAAT. Although CAAT protection does, it does not have the same, it's not the quite the same standard as applied when using, when referring to the rebuttable presumption with withholding a removal, safe liberation is still a fact that should be considered when accepting CAAT protection claims. And in this, in this case, the agency was proper and it properly determined the fact that the petitioner was safely relocated. It was a base, it was a valid basis for denying the CAAT protection. If the court doesn't have any other questions, I would like to go ahead and conclude and rest on all the arguments and the answering brief. In this case, the court should deny the position for review. I'm sorry. Oh, I was just saying it didn't appear we had additional questions. So you may conclude and wrap up. Okay. Okay, great. Thank you. The court should deny the position for review. Okay. The court denied the position for review because substantial evidence supports this, the conclusion that the petitioner is not eligible for relief or protection under the CAAT. Thank you, your honors. Thank you. Ms. Miro, you have some time for rebuttal. Thank you. Yes. Your honors, I apologize. The administrative record, the factual testimony is at page 149. My client does state that he was in Lahore for 30 days. And that during that time, he had contact with this family who told him that they, that the, his assailants were still looking for him. It does not say that it was, that he was in hiding. There's no development as to what he did during those 30 days, but it does say that he was there for 30 days and he does have connections with this family. As far as internal relocation, we do believe, and we did argue in our briefs that the immigration judge didn't take into consideration Mr. Abbas' unique set of facts, unique position, the conversion, the connection to his particular mosque, the SSP, the terrorist ties. And so he's just distinctly different from comparing him to generalized country conditions. I believe in this case, the court should have made a more individualized assessment with respect to Mr. Abbas' unique set of facts. That did not happen. At a very minimum, the case should be the internal relocation, because I think it is important to analyze Mr. Abbas' conversion, the past persecution that he suffered and whether or not he's at a heightened risk in Pakistan, given his unique circumstances. If there are no other questions, your honors, I would submit. Thank you. I'd like to thank both counsel for your briefing and for your argument. The case of Abbas v. Wilkinson is submitted this morning.
judges: McKeown, Ikuta, Ericksen